IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| CAMERON S. ALLSHOUSE, | CV 12-110-BLG-SEH-CSO |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Pro se Plaintiff Cameron S. Allshouse ("Allshouse") seeks judicial

review of Defendant Commissioner of Social Security's

("Commissioner") decision denying his application for disability

insurance benefits ("DIB") and supplemental security income ("SSI")

under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C.

§§ 401-433, 1381-1383(c).  *Cmplt. (ECF 6)*[1].

[1]The ECF citation refers to the document as it is numbered in the Court's electronic filing system.  Citations to page numbers refer to those assigned by the ECF system.

Now pending are the parties' cross-motions for summary judgment. *ECF 18* (Allshouse's "Briefing Statement", construed as a motion) and *22* (Commissioner's motion). For the reasons stated below, the Court recommends that Allshouse's motion be denied, the Commissioner's motion be granted, and the Commissioner's decision denying DIB and SSI be affirmed.

I. **PROCEDURAL BACKGROUND**

On May 11, 2009, Allshouse filed applications for DIB and SSI. *Tr. 147, 154*. He alleged that he had been unable to work since January 31, 2009, due to degenerative disc disorder, headaches, and a herniated disc in his neck. *Tr. 90, 92, 95*. The Social Security Administration ("SSA") denied Allshouse's claims both initially and on reconsideration. *Tr. 82, 85, 90, 92*.

On January 6, 2011, an Administrative Law Judge ("ALJ") held a hearing. *Tr. 25*. On February 15, 2011, the ALJ issued a written decision denying Allshouse's claim. *Tr. 12-20*. On June 25, 2012, after the Appeals Council denied Allshouse's request for review, the ALJ's decision became final for purposes of judicial review. *Tr. 1-3*; 20 C.F.R.

§ 404.981 (2012).

Allshouse filed this action *pro se* on August 28, 2012. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. <u>STANDARD OF REVIEW</u>

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882

(9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III. <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(I)-(v).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5. If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.   **THE ALJ's OPINION**

The ALJ followed the five-step sequential evaluation process in considering Allshouse's claims. First, the ALJ found that Allshouse had not engaged in substantial gainful activity since his alleged onset date of January 31, 2009. *Tr. 14.*

Second, the ALJ found that Allshouse "has the following severe impairments: degenerative disc disease of the lumbar spine, headaches and neck pain[.]" *Id.*

Third, the ALJ found that Allshouse does not have an impairment or combination of impairments that meets or medically equals one

contained in the Listing of Impairments. *Tr. 14-15*.

Fourth, the ALJ found that Allshouse has the residual functional

capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except [Allshouse] would be precluded from any
> over-head reaching on more than an occasional basis and be
> precluded from the climbing of ladders and scaffolds.
> [Allshouse] would also be limited to balancing, stooping,
> kneeling, crouching and crawling on more than an
> occasional basis and must avoid concentrated exposure to
> extreme temperatures and working around hazardous
> machinery and unprotected heights. Lastly, [Allshouse]
> would be precluded from working at jobs involving constant
> stress.

*Tr. 15*.

The ALJ found that Allshouse is capable of performing his past

relevant work as a fast food worker and deliverer, because these jobs do

not require the performance of work-related activities precluded by the

RFC. *Tr. 19.* Alternatively, the ALJ found that there are other jobs

that exist in significant numbers in the national economy that

Allshouse can also perform, such as Parking/Toll Collector, Parking

Attendant, and Cashier-2. *Tr. 19-20*.

The ALJ concluded that Allshouse has not been under a disability,

as defined under the Act, from January 31, 2009, through the date of the ALJ's decision of February 15, 2011. *Tr. 20.*

## V. <u>PARTIES' ARGUMENTS</u>

Allshouse first argues that the ALJ's opinion is in error because he ruled on a "non-existent injury." *ECF 18 at 1.* Allshouse argues that he applied for benefits based on an upper cervical injury, yet the ALJ based the denial of his claim on a lower lumbar spine injury. *Id.*

Second, Allshouse argues that "[t]here was enough evidence to show that [he] had a severe disability." *Id at 3.* Allshouse cites to the opinion of his treating physician, Daniel L. Gall, M.D., who opined that Allshouse is unable to be gainfully employed in any capacity. *Id.*

Third, Allshouse argues that the Commissioner improperly refused to consider his appeal of the ALJ's decision. *Id. at 2-3.*

Finally, Allshouse argues that the hearing before the ALJ was compromised by (1) a bad phone connection between his lawyer, appearing telephonically, and the ALJ; and (2) the fact that his wife and mother were not allowed to comment. *Id. at 2.*

In response, the Commissioner argues that the ALJ's RFC

assessment and finding that Allshouse was not disabled is based on substantial evidence. *ECF 23 at 2-3.* The Commissioner argues that the ALJ: (1) reasonably discounted Allshouse's subjective complaints of disabling limitations; (2) reasonably discounted Dr. Gall's opinions because they were not based on objective medical evidence and were not consistent with the record; and (3) properly included all of Allshouse's credible limitations in the RFC assessment. *Id. at 4-15.*

Addressing Allshouse's other arguments, the Commissioner argues: (1) Allshouse and his attorney made clear that Allshouse's wife and mother did not intend to testify; (2) there is no indication that Allshouse's attorney was unable to hear or understand any of the proceedings; and (3) the Appeals Council properly considered and rejected Allshouse's request for review. *Id. at 14-16.*

Allshouse did not file a reply brief in support of his motion.

## VI. <u>DISCUSSION</u>

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. The Court is not permitted to re-weigh the evidence.

Considering Allshouse's allegations of error and applying controlling Ninth Circuit authority, the Court concludes, as discussed below, that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error.

### A.    ALJ's Consideration of the Evidence

In evaluating Allshouse's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted).  In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed decision.  He thoroughly reviewed, as discussed further below, his rationale for rejecting certain evidence in his assessment of Allshouse's medical records, credibility, and RFC.  *Tr. 15-20.*  In his written decision, he also set forth the evidence – which the Court concludes is substantial – that informed

and supported his conclusion with respect to Allshouse's disability claims. *Id.* For these reasons, the Court finds unpersuasive Allshouse's argument that the evidence does not support the ALJ's denial of his claims for DIB and SSI.

Specifically, the ALJ's decision is not in error by reason of his conclusion at step 3 that Allshouse suffers from "degenerative disc disease of the lumbar spine." *See Tr. 14.* It is clear from the ALJ's decision that he thoroughly considered the evidence regarding Allshouse's cervical spine. The ALJ analyzed the detailed findings of an April 15, 2008 MRI of Allshouse's "cervical" spine. *See Tr. 16.* He reviewed an October 22, 2008 examination by Michael Schabacker, M.D., who stated in his report: "NECK is supple without adenopathy or thyromegaly. Cervical range of motion is full." *Tr. 16* (citing *Tr. 396*). The ALJ also reviewed a December 16, 2008 examination by Dr. Gall, wherein Allshouse "was found to have at this time a normal range of motion in his neck." *Tr. 17* (citing *Tr. 485*). The ALJ reviewed the x-ray testing of Allshouse's cervical spine performed in May 2009. *Tr. 17.* *See also Tr. 17-18* (review of medical records regarding cervical spine

issues, dated August 14, 2009, October 2009, and December 1, 2009).

Finally, the ALJ included in the RFC a limitation that Allshouse is "precluded from any over-head reaching on more than an occasional basis..." *Tr. 15*.

Despite reference to the lumbar spine, it is apparent from the ALJ's analysis that he properly considered the medical evidence with respect to Allshouse's cervical spine, and properly included this evidence in his RFC assessment. Even if this apparent discrepancy were error, the Court concludes that it is harmless and has no impact on the validity of the ALJ's decision.

### B. <u>Weight ALJ Afforded Dr. Gall's Opinions</u>

On November 30, 2009, Dr. Gall wrote a "to whom it may concern letter" opining that Allshouse "at present, because of his problems, is unable to be gainfully employed in any capacity." *Tr. 597*. In a letter dated July 6, 2010, Allshouse's attorney asked Dr. Gall whether Allshouse could have performed substantial gainful employment from the alleged onset date to the present. *Tr. 617*. Dr. Gall checked the space indicating that he did not believe Allshouse could have performed

substantial gainful employment during this time period. *Id*.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. [The Ninth Circuit Court of Appeals has] also held that 'clear and convincing' reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted).

The ALJ accorded "very little weight" to Dr. Gall's opinions because "they are based on no objective medical evidence and are inconsistent with the majority of the medical evidence of record." *Tr. 18*. In making this finding, the ALJ noted that a significant portion of Dr. Gall's treatment, i.e. five months, falls outside Allshouse's date last insured. *Tr. 18*.

The ALJ did not err in discounting Dr. Gall's opinions. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Both Dr. Gall's November 30, 2009 letter and subsequent response to the letter from Allshouse's attorney are brief, conclusory, and unsupported by any clinical findings.

Furthermore, the ALJ found that Dr. Gall's opinion is inconsistent with the majority of the medical evidence of record. *See* 20 C.F.R. § 404.1527 ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). First, the opinion is inconsistent with Dr. Gall's December 16, 2008 examination, which revealed: "My impression in general is there's been nothing found that could explain [Allshouse's] degree of discomfort." *Tr. 17* (citing *Tr. 485-86*). Dr. Gall concluded that Allshouse had normal range of motion in his neck, and discharged him with directions to adhere to physical therapy for neck exercises. *Tr. 485-86*.

Second, the opinion is inconsistent with the other medical

evidence in the record. The ALJ cited to: (1) the April 15, 2008 MRI results showing that "[t]he cervical cord appears intrinsically normal[,]" *Tr. 16* (citing *Tr. 391*); (2) Dr. Schabacker's exam finding "[c]ervical range of motion is full[,]" *Tr. 16* (citing *Tr. 391*); and (3) an October 13, 2009 exam by Eric Schubert, M.D., finding that MRI "demonstrates mild degenerative disk disease at C5-6 and C6-7, but with maintenance of the normal cervical lordosis and no evidence of subluxation[,]" *Tr. 17* (citing *Tr. 553*).

### C. ALJ's Assessment of Allshouse's Credibility

As noted, Allshouse argues that "[t]here was enough evidence to show that [he] had a severe disability, needed surgery, and was unable to work." *ECF 18 at 3.* To the extent Allshouse argues that the ALJ failed to take into consideration his own testimony as evidence of his disability, the Court finds that the ALJ did not err in assessing Allshouse's credibility.

In *Molina* v. Astrue, 674 F.3d 1104 (9th Cir. 2012), the Ninth Circuit restated the long-standing standard for assessing a claimant's credibility as follows:

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms. At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A). In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotations omitted).

The ALJ found that Allshouse's "statements concerning the

intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the" RFC. *Tr. 19.* Also, the ALJ did not specifically find that Allshouse was malingering. Thus, to find that Allshouse was not entirely credible, the ALJ had to give specific, clear, and convincing reasons for doing so. The Court concludes that he did.

First, the ALJ noted that on September 2, 2008, Allshouse "was talked to about what appeared to be an almost aggressive attempt to seek out narcotic medication, i.e., Fiorinal with codeine, for his headache pain." *Tr. 17.* An ALJ may consider evidence of drug-seeking behavior when assessing the claimant's credibility. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding that the likelihood that claimant was exaggerating complaints of physical pain to "feed his Valium addiction" supported the ALJ's decision to reject his testimony). The ALJ cited two progress reports demonstrating this behavior: (1) a report by Glenn Guzman, M.D., noting that because of Allshouse's aggressive and threatening behavior towards one of the doctor's nurses, he would no longer be seeing Allshouse as a patient, *id.*

(citing *Tr. 520*); and (2) a report by Beth Hamilton, PA-C, informing

Allshouse that her clinic would no longer be refilling his Fiorinal with

codeine medicine, *id*. (citing *Tr. 403*).

Second, the ALJ noted that while Allshouse's Function Report and

hearing testimony suggested that he "is allegedly limited with respect

to virtually all activities of daily living[,]" *Tr. 18* (citing *Tr. 232*), the

Third Party Questionnaire filled out by Allshouse's mother "reveals a

somewhat different picture about [Allshouse's] limitations[,]" *Tr. 18*

(citing *Tr. 247*). The ALJ explained that according to Allshouse's

mother, Allshouse "is able to take care of pets, cook, do laundry, and is

much more capable than what [Allshouse] alleged insofar as caring for

his personal needs." *Tr. 18*. The ALJ properly considered these

inconsistencies in evaluating Allshouse's credibility. *See* SSR 96-7P,

1996 WL 374186, * 5 (S.S.A July 2, 1996) ("One strong indication of the

credibility of an individual's statements is their consistency, both

internally and with other information in the case record").

Third, the ALJ cited to a May 2009 examination, at which

Allshouse "complained of palpation tenderness and pain with

movement of the left shoulder..." *Tr. 17.* During the examination, however, and with some distraction by the nurse, Allshouse "was found to have full range of motion of the shoulder without any limitations." *Id.* (citing *Tr. 465-468*).

Fourth, the ALJ noted Allshouse's testimony regarding his marijuana use. *See Tr. 18.* The ALJ pointed out that on October 22, 2008, Dr. Schabacker acknowledged Allshouse's "frequent" use of marijuana, noted that he did not have a marijuana card, and advised Allshouse that the use of illicit substances in conjunction with prescription medications is contraindicated. *Tr. 16-17, 18* (citing *Tr. 394-396*). At the hearing, however, Allshouse reported only very seldom marijuana use. *Tr. 18.*

All of the foregoing observations, which the Court finds to be supported by the evidence of record, indicate that the ALJ properly applied ordinary credibility evaluation techniques in assessing Allshouse's credibility, and gave specific, clear, and convincing reasons for discounting his testimony. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

1993)).  As noted, the Court cannot substitute its own interpretation of the evidence for the ALJ's interpretation.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citation omitted).  The ALJ did not err.

### D.  Appeals Council's Review of ALJ's Decision

The Court is unpersuaded by Allshouse's arguement that the Commissioner failed to properly consider his appeal of the ALJ's decision.  First, the Court does not have jurisdiction to review the Appeals Council's decision.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner").

Second, contrary to Allshouse's argument, a plain reading of the Notice of Appeals Council Action reveals: "In looking at your case, we considered the reasons you disagree with the decision in the material listed on the enclosed Order of Appeals Council.  We found that this

information does not provide a basis for changing the Administrative Law Judge's decision." *Tr. 1-2.*

### E.   ALJ's Administration of the Hearing

Allshouse's final two claims of error deal with the ALJ's administration of the claims hearing. After considering these arguments in conjunction with the hearing transcript provided in the record, the Court finds no error.

With respect to Allshouse's argument that his mother and wife "were not allowed to comment[,]" the record reveals that both Allshouse and his attorney explained to the ALJ that Allshouse's mother and wife did not intend to testify, but instead were present only to observe the hearing. *See Tr. 28.*

The Court also finds no error with respect to the alleged compromised phone connection between Allshouse's attorney and the ALJ. Allshouse expressly stated he had no objection to his attorney appearing by phone. *Tr. 30.* And, at the outset of the hearing, the ALJ told Allshouse's attorney "if for some reason you can't hear something please holler right away rather than wait downstream to ask for it

later…" *Id.* While it does appear that at times the phone connection was disrupted, Allshouse's attorney actively participated during the hearing and there is no indication that he was unable to hear or understand any of the proceedings.

## VII. <u>CONCLUSION</u>

Based on the foregoing, **IT IS RECOMMENDED** that Allshouse's summary judgment motion (*ECF 18*) be DENIED, the Commissioner's summary judgment motion (*ECF 22)* be GRANTED, and the Commissioner's decision denying DIB and SSI be affirmed.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 23rd day of May, 2013.

/s/ Carolyn S. Ostby
United States Magistrate Judge